IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DOUGLAS and CINDY EDWARDS,                    3:19-cv-01425-BR

        Plaintiff,                    OPINION AND ORDER

v.

CINCINNATI INSURANCE COMPANY,

        Defendant.


**ANTHONY L. REINER**
Maloney Lauersdorf & Reiner, PC
1111 E. Burnside Street
Suite 300
Portland, OR 97214
(503) 245-1518

        Attorneys for Plaintiff

**LLOYD BERNSTEIN**
**JACQUELINE TOKIKO MITCHSON**
Bullivant Houser Bailey PC
One S.W. Columbia Street
Suite 800
Portland, OR 97204
(503) 228-6351

        Attorneys for Defendant


1 - OPINION AND ORDER

BROWN, Senior Judge.

This matter comes before the Court on Plaintiffs' FRCP 54 Motion (#18) for Attorney Fees and Costs and Plaintiffs' Supplemental FRCP 54 Motion (#36) for Attorney Fees. The Court concludes the record is sufficiently developed, and, therefore, oral argument would not be helpful to resolve these Motions.

For the reasons that follow, the Court **GRANTS** Plaintiffs' Motions and awards Plaintiffs attorneys' fees in the amount of **$219,057.50** and costs in the amount of **$712**.

<u>**BACKGROUND**</u>

The following facts are taken from Plaintiffs' Complaint and the parties' filings related to Plaintiffs' Motions for Attorney Fees.

In 1991 Plaintiffs purchased a home built in 1910 in Yamhill, Oregon. At some point Plaintiff purchased a Homeowner Insurance Policy from Defendant Cincinnati Insurance Company that included an "additional coverage k" endorsement to HR700 that "increased the base policy's code coverage from 10% of policy limits to 100% of policy limits." Decl. of Anthony Reiner, Ex. 1 at 42; Pls.' FRCP 54 Mot. at ¶ 6. Plaintiffs purchased the additional coverage k endorsement on the recommendation of "their agent, because minor repairs for a 107 year old home can potentially trigger major repair expenses due to the fact that

2 - OPINION AND ORDER

such repairs must satisfy modern code requirements."  Pls.' FRCP 54 Mot. at ¶ 6.  At some point Plaintiffs renewed their Homeowner Insurance Policy, including the additional coverage k endorsement, for the policy period January 7, 2017, through January 7, 2018.

On August 6, 2017, a "drunk driver . . . failed to negotiate a turn on Highway 47 and . . . crashed through [Plaintiffs'] porch and entryway and continued traveling through the home's living room.  The vehicle finally came to rest with its damaged front end in the kitchen of [Plaintiffs'] home."  Pls.' FRCP 54 Mot. at ¶ 4.  Among other things, "[t]he vehicle . . . largely destroyed the contents of Plaintiffs' filing cabinet, with the exception of Plaintiffs' insurance policy issued by Defendant which . . . survived the crash intact."  Pls.' FRCP 54 Mot. at ¶ 5.

On August 7, 2017, Plaintiffs telephoned Defendant "to report the crash and determine how [to] get [their] home repaired, replace [their] possessions, and where [they] could live in the meantime."  Decl. of Cindy Edwards at ¶ 6.

On August 9, 2017, Claims Adjuster Janice Fondse noted in the claim-activity log that she met with Plaintiffs at their home, took photographs, provided Plaintiffs with a copy of their insurance policy and endorsements, and "went over coverage." Reiner Decl., Ex. 6 at 3.  Fondse noted Plaintiffs advised her

that they had hired Paul Moreland, a private adjuster, "to help

them with the contents claim only, however, that would be

unusual." Reiner Decl., Ex. 6 at 3. Fondse also discussed

accommodations for Plaintiffs during the estimated six-month

repair period:

> [T]hey have about 1 acre of land with the house,
> and Mr. Edwards works out of his garage, they also
> have 2 dogs and a large koi pond with 25 year old
> koi. There are no homes for rent nearby, the area
> is not necessarily safe from break-ins, so they
> want to stay on site. I went over the pros and
> cons of staying on site. The closest larger town
> is McMinnville @ 20 miles, it is too far for them
> to stay. So I agreed to find them a travel
> trailer or other type of trailer that is
> self-contained.

Reiner Decl., Ex. 6 at 3.

On December 22, 2017, Fondse completed a Property Large Loss

Advice Memorandum in which she noted Moreland had not yet

provided Defendant with a cost and scope report "despite repeated

requests." Reiner Decl., Ex. 4 at 1. Fondse stated Defendant

hired "Bob Ramsey of Young and Associates as [its] Construction

Consultant," and Ramsey's "initial repair number is estimated at

$100,000." Reiner Decl., Ex. 4 at 1. Fondse noted Moreland

hired HMA, a contractor, on behalf of Plaintiffs to provide an

estimate. Fondse stated HMA's estimated repair "number is

currently at $200,000. The difference in these amounts appear[s]

to be [HMA's] desire to replace the entire roof, which [Ramsey]

advises is not needed, and [Plaintiffs'] desire to repair

foundation issues, which is [*sic*] not related to this loss."
Reiner Decl., Ex. 4 at 1.

On March 30, 2018, Defendant issued a payment to Plaintiffs
in the amount of $79,815.29 for "actual cash value (ACV)
structure coverage."  Suppl. Decl. of Anthony Reiner, Ex. 26
at 1.

In October 2018 Defendant hired Jensen Hughes, a structural
engineering company, to inspect and to evaluate the damage to
Plaintiffs' home.  On October 19, 2018, Cliff Jones, a senior
structural engineer from Jensen Hughes, inspected Plaintiffs'
home and interviewed Plaintiffs, Moreland, and Yamhill County
Building Inspector Tim Codiga.  On November 6, 2018, Jones
provided Defendant with a Vehicle Strike Damage Assessment via
Ramsey in which Jones set out the "extent of damage related to
the vehicle strike."  Reiner Decl., Ex. 5 at 10.  Jones noted his
report "addresses damages and repair recommendations for the
observed vehicle strike related damages only.  The [Yamhill
County Building Official] should be contacted to confirm the
extent of additional repairs required, unrelated to the vehicle
strike, for code-compliance."  Reiner Decl., Ex. 5 at 10.

On November 27, 2018, Fondse emailed Erick Hill, her
supervisor, and noted Defendant received a repair estimate of
$168,113.95 that was "put together with the input of an engineer
[and] is closer to the estimate written by [Plaintiff's]

contractor and [Moreland]." Reiner Decl., Ex. 6 at 5. Fondse advised Hill that she "would like to go ahead and issue a 2nd check for [$88,298.66 for] the additional undisputed amount so that the insured can begin the repairs. . . . OK to issue a check?" Reiner Decl., Ex. 6 at 6. The record does not include any response from Hill to Fondse's request to issue a check for $88,298.66.

On December 10, 2018, Fondse reported in her claim-activity log that she "confirmed . . . the check was going out [to Plaintiffs] for the uncontested amount of repairs as well as the 10% ordinance/code limit." Reiner Decl., Ex. 6 at 6. The record reflects on December 10, 2018, Defendant issued a check to Plaintiffs for $65,769.07 comprised of $27,669.07 "for building repairs" and $38,100 "for ordinance Building/Dwelling repair." Reiner Decl., Ex. 7 at 1. The note line of the check indicates the $38,100 was for "ordinance/code compliance (10% of limits)." Reiner Decl., Ex. 7 at 1. This check brought the total amount Defendant paid Plaintiff on their claim to $145,584.36.

On December 13, 2018, Fondse and her supervisor, Pamela Pitts, met with Cindy Edwards at Plaintiffs' home. On December 14, 2018, Pitts stated in the claim-activity log that she reviewed Plaintiffs' policy and noted Plaintiffs had "the HR700 Endorsement which gives [them] 100% for code upgrades" rather than the ten percent code-coverage limit that Defendant

used in its calculation of the December 10, 2018, payment to
Plaintiffs. Reiner Decl., Ex. 6 at 7. Pitts also noted the
following about the inspection of Plaintiffs' home:

> Foundation is ok
> Footings were approved by FCR
> Roof approved by FCR
> Siding approved by FCR - since roof work and code
> upgrades for headers, etc., siding will need to be
> removed from all sides; will need replaced.
> Drywall and underlayment will need to come out in
> the rooms (already out in the common living area).
> They will get wet as the roof is partially off.
> Contractor is going to try and save what he can;
> however, they have to get in the walls anyway for
> electrical.
> Insulation underneath the house is getting wet and
> will need to be replaced.
> There is an egress window in the bedroom; however,
> it is too small for code. Contractor is going to
> try and see if it will pass inspection.
> Kitchen - Paul can do demo "per room" as opposed
> to line item which would be cheaper.
> Three layer roof so additional labor to tear off.

Reiner Decl., Ex. 6 at 8.

On December 14, 2018, Pitts emailed Moreland and asked him
to provide Defendant with Plaintiffs' repair estimate.

At the end of March 2019 Fondse left her employment with
Defendant, and Maureen Baldwin became the adjuster for
Plaintiffs' claim.

On April 4, 2019, Baldwin noted in the claim-activity log
that Young and Associates, Defendant's construction consultant,
met with Moreland at Plaintiffs' home and discussed the progress
with a Yamhill County building inspector. Young and Associates
stated Plaintiff's residence was "not yet habitable" and "repairs

7 - OPINION AND ORDER

likely to continue into May [2019]."  Reiner Decl., Ex. 6 at 9.
Young and Associates noted the following issues had arisen during
construction up to that date:

> 1-The roof and roof framing were replaced.  The
> vehicle impact caused a sag in the roof framing.
> When they opened up the roof, they found there had
> been a prior attic fire that was not repaired
> properly or permitted.  This triggered additional
> work to the roof with the end result of new roof
> framing.
>
> 2-The foundation that was hit by crash was a
> separate foundation and not tied to the rest of
> the house.  They ran into problems trying to tie
> in the new foundation to the existing foundation.
>
> 3-When roof system was replaced, they were unable
> to adequately tarp and water entered structure.
> They gutted the interior due to water intrusion.

Reiner Decl., Ex. 6 at 9.  Young and Associates asked Baldwin
"for code limit concerns."  Reiner Decl., Ex. 6 at 9.

On April 5, 2019, Defendant received an updated estimate of
$323,527.53 from HMA for the repairs to Plaintiffs' residence.
Reiner Decl., Ex. 8 at 2.

On April 9, 2019, Baldwin emailed Young and Associates and
advised she "checked on the Ordinance of Law coverage and we do
not have a limit concern on this.  [Plaintiffs] have an
endorsement adding additional code coverage."  Reiner Decl.,
Ex. 6 at 9.  Also on April 9, 2019, Young and Associates met with
HMA at Plaintiffs' residence to review HMA's estimate.

On May 16, 2019, HMA provided Defendant with a "revised,

reduced estimate." Reiner Decl., Ex. 6 at 10; Ex 8 at 2.[1] HMA

also provided Defendant with a "specific and itemized list of

their concerns with the Young & Associates estimate." Reiner

Decl., Ex. 6 at 10.

On June 5, 2019, Defendant received an updated estimate from

Young and Associates in the amount of $280,154.33. Reiner Decl.,

Ex. 6 at 10. Baldwin noted in the claim-activity log that "[a]

large portion of the differences [between Plaintiffs' and

Defendant's estimates] are with regard to supervision, dump fees,

and labor costs." Reiner Decl., Ex. 6 at 10. Baldwin pointed

out that Plaintiffs' policy limits were $364,000 and noted again

that Plaintiffs' policy included

> the Homeowners Plus Endorsement HR700 . . . which
> changes Additional Coverage K Ordinance of Law
> from 10% to 100% code. The code coverages is
> [*sic*] included as part of the Coverage A Dwelling
> limits.

Reiner Decl., Ex. 6 at 10. Baldwin explained Plaintiffs' roof

was replaced "due to building code concerns. This triggered

additional work inside the house as well as water damage

associated with replacement of the roof system in winter."

Reiner Decl., Ex. 6 at 10. Baldwin noted HMA was not authorized

---

[1] The precise amount of the estimate is unclear in the
record. In a claim-activity log entry Baldwin states the HMA
estimate is $308,126.65. Reiner Decl., Ex. 6 at 10. In a
July 24, 2019, email to Pitts, however, Baldwin states HMA "is
seeking a total of $316,966.68 for the structure." Reiner Decl.,
Ex. 8 at 2. The Court need not resolve this factual issue to
decide Plaintiffs' Motions for Attorney Fees.

to start repairs until December 2018, and "[r]eplacement of a roof system in winter is exceptionally difficult to do without water intrusion." Reiner Decl., Ex. 6 at 10. Baldwin concluded "[i]t is not unreasonable that water would have entered the home even with repeated tarping." Reiner Decl., Ex. 6 at 10.

On June 28, 2019, Pitts noted in the claim-activity log that she had "discussed [Plaintiffs' claim] with [her supervisor,] Erick [Hill]. . . . [Defendant] will make [a claim-payment] offer to [Plaintiffs] contingent on a global release." Reiner Suppl. Decl., Ex. 23. at 1. On July 1, 2019, Baldwin noted in the claim-activity log that she called Moreland to "discuss resolution of the claim," but Moreland was on vacation until July 8, 2019. Reiner Suppl. Decl., Ex. 23. at 1.

On July 8, 2019, Baldwin noted in the claim-activity log that she spoke with Moreland and "let him know the estimate from Young & Associates is less than [Plaintiffs'] updated estimate. [Plaintiffs] are concerned with the [statute of limitations] and plan to file suit by 8/6 if we are unable to reconcile. I let [Moreland] know [Defendant] may be able to pay above the Y&A estimate but [it] will need a signed full and final release." Reiner Decl., Ex. 6 at 11.

On July 19, 2019, Baldwin noted in the claim-activity log that she had received six emails from Plaintiffs with documents

supporting Plaintiffs' claim:  (1) "ALE[2] invoices" from HMA;
"hotel receipts[;] . . . food and propane receipts[;] . . .
temp[orary] toilet and storage receipts[;] . . . estimate for
contents pack out, pack back[,] and cleaning and revised
structure estimate"; and photographs.  Reiner Decl., Ex. 6 at 12.

On July 20, 2019, Baldwin noted in the claim-activity log
that on July 19, 2019, she reviewed the documents provided by
Plaintiffs.  Baldwin listed the type of each kind of ALE
requested by Plaintiffs, the amount of each type of ALE, and
whether the ALE sought was "appropriate to reimburse."  Reiner
Decl., Ex. 6 at 13-16.  Specifically, Baldwin noted Plaintiffs'
costs for hotel, food, "increase[d] mileage while in hotel,"
propane, and storage were "appropriate to reimburse."  Reiner
Decl., Ex. 6 at 13-16.  Baldwin declined to reimburse Plaintiffs'
costs for laundry and temporary toilet because Plaintiffs did not
provide documentation to support their request.  Baldwin
expressed concern about whether it was appropriate for Defendant
to reimburse Plaintiffs' costs for pack out, pack in, and
cleaning because the hours requested for those tasks seemed high.

On July 20, 2019, Baldwin noted in the claim-activity log
that she reviewed Plaintiffs' "revised structure estimate," which
consisted of "$272,461.99 (non-code), $4,800 (landscaping) and
$42,786.77 (code)" for a total revised estimate of $320,048.76.

---

[2] Refers to additional living expenses.

11 - OPINION AND ORDER

On July 24, 2019, Baldwin sent an email to Pitts to update her on Plaintiffs' summary of loss and claim demand.  Baldwin noted:

> There has been difficulty throughout the handling of the claim in reaching an agreement on the scope and cost of repairs.  The challenges included code related repairs to the foundation, roof and interior of the home.  There remains a discrepancy between the costs HMA associates with code and the costs we associate with code.  [Plaintiffs'] policy contains Homeowners Plus Endorsement HR700OR which provides 100% coverage for ordinance or law costs incurred up to the policy limits.

Reiner Decl., Ex. 8 at 1.  Baldwin noted Defendant sent Plaintiffs an initial payment of $79,815.29 "for the repairs" on March 30, 2018, and "two additional payments" totaling $65,769.07 on December 7, 2018.  In summary, Defendant did not pay Plaintiffs any funds after December 2018, and, therefore, Defendant's "structure payments [as of July 24, 2019,] total[ed] $146,195.88."  Reiner Decl., Ex. 8 at 1.  Baldwin noted HMA provided Defendant with an updated estimate of $323,527.52 on April 5, 2019.  Baldwin explained Plaintiffs, after various conversations, reduced their estimate and sought "a total of $316,966.68 for the structure. . . .  [Defendant] continue[s] to have concerns with the estimate but do[es] not believe [Plaintiffs are] willing to negotiate further."  Reiner Decl., Ex. 8 at 2.  Baldwin reviewed the recommendations related to Plaintiffs' requested ALE that she had set out in her July 20, 2019, note to the claim-activity log.  Finally, Baldwin noted "at

12 - OPINION AND ORDER

this point there is little room to negotiate further" and she expected Plaintiffs to file an action on the claim on August 6, 2019.  Reiner Decl., Ex. 8 at 3.

Baldwin went on vacation at some point after July 24, 2019.

On August 2, 2019, Pitts sent an email to Moreland and also to an address that she believed belonged to Clint Edwards in which she provided Defendant's "response and decision regarding [Plaintiffs' claim]."  Reiner Decl., Ex. 6 at 16.  Pitts noted Defendant had paid Plaintiffs $146,195.88 "for the repairs to the dwelling" and informed Plaintiffs and Moreland that Defendant "has . . . determined there are not additional payments due." Reiner Decl., Ex. 9 at 8.  Defendant relied in part on the standard Form HR700OR that limits payments for ordinance and/or code compliance to ten percent of an insured's limit.  Pitts did not reference or acknowledge the additional coverage k endorsement in Plaintiffs' policy.  Pitts noted Defendant had paid Plaintiffs $63,546.21 for ALEs and that coverage

> extends for the shortest period of time required
> to repair or replace the premises.  As the period
> of restoration should not have extended beyond
> 12-months, which would be considered more than
> reasonable considering the damages, and we have
> paid far beyond that time frame, we are advising
> you we will issue no further payments under the
> coverage going forward.

Reiner Decl., Ex. 9 at 8.  Moreland received Pitts's August 2, 2019, email but Plaintiffs did not because they do not use email, they did not communicate with Defendant via email at any time

13 - OPINION AND ORDER

during the claims process, and the email address used by Pitts
did not belong to Clint Edwards.

On August 6, 2019, Baldwin noted in the claim-activity log
that Pitts used an incorrect email address for Plaintiffs, but
that Moreland received Pitts's email.

On August 5, 2019, Plaintiffs filed a Complaint against
Defendant in Yamhill Circuit Court alleging claims for breach of
contract and breach of the implied covenant of good faith and
fair dealing.  On September 6, 2019, Defendant removed the matter
to this Court on the basis of diversity jurisdiction.

On September 13, 2019, Defendant filed an Answer and
Affirmative Defenses in which it asserted affirmative defenses of
failure to state a claim, offset, failure to cooperate, failure
to mitigate, accord and satisfaction, "conduct of a third party,"
"policy limits," and "policy provisions" that included a "ten-
percent ordinance or law provision."

At some point after Plaintiffs received Defendant's Answer,
Plaintiffs' counsel contacted defense counsel and advised them
"that Defendant's policy contained the HR700 Endorsement, which
increased code coverage to 100% of the policy's structure limit."
Pls.' FRCP 54 Mot. at 9-10.

On November 1, 2019, defense counsel "acknowledged in
writing that Defendant's policy contained an endorsement that
changed the Ordinance or Law coverage limit from 10% to 100%."

14 - OPINION AND ORDER

Pls.' FRCP 54 Mot. at 10.  As a result of Defendant's acknowledgment, Plaintiffs believed Defendant would pay "the undisputed $99,319.96 in code coverage [that] Defendant's own calculations [reflected Defendant] owed [to Plaintiffs]."  Pls.' FRCP 54 Mot. at 10.  Plaintiffs, therefore, agreed to mediation before depositions occurred.

On December 20, 2019, the parties engaged in mediation. Defendant offered Plaintiffs $72,000 inclusive of attorneys' fees.  Plaintiffs stated they were unwilling to settle the case for less than $200,000.  Defendant refused, and mediation ended.

On January 10, 2020, Defendant responded to Plaintiffs' requests for admissions and asserted its statement in both its August 2, 2019, letter to Plaintiffs and in its Answer to Plaintiffs' Complaint that Plaintiffs had a ten-percent code-coverage limitation was "an unintentional error."  Nevertheless, Defendant denied it "partially denied Plaintiffs' claims based on [its] misrepresentation of" Plaintiffs' code coverage.  Reiner Decl., Ex. 10 at 4.

On January 16, 2020, Defendant sent Plaintiffs an offer of judgment in the amount of $145,543.47, exclusive of attorneys' fees.

On March 18, 2020, Defendant made Plaintiffs a settlement offer of "$200,000 in resolution of all claims, including attorney fees."  Reiner Decl., Ex. 13 at 1.  Plaintiffs countered

with "310,000, exclusive of attorney fees" and noted "there is not much flexibility in Plaintiffs' settlement position.  We are estimating ongoing ALE through September 30, 2020 to complete construction."  Reiner Decl., Ex. 13 at 1.

On April 2, 2020, Defendant offered $200,000 exclusive of attorneys' fees to settle the matter.  Although Plaintiffs had demanded this same amount at the December 2019 mediation, Plaintiffs counteroffered to settle for "$305,000, with the exception of attorney fees and costs."  Reiner Decl., Ex. 14 at 1.  Plaintiffs explained they had "fixed construction costs" and had incurred "ongoing ALE costs."  Reiner Decl., Ex. 14 at 1. Specifically, Plaintiffs noted because of the COVID-19 pandemic and other issues they still had at best five more months of construction "based on [Defendant's] own estimate," which, in turn, meant Plaintiffs had "seven more months of continued expenses for temporary housing, storage, propane, porta•potty, laundry, electricity and other expenses."  Reiner Decl., Ex. 14 at 1.

On May 4, 2020, the parties settled the matter for $295,000 exclusive of attorneys' fees and costs.  Defendant issued a payment for $295,000 to Plaintiffs on June 11, 2020.

On August 14, 2020, Plaintiffs filed their FRCP 54 Motion for Attorney Fees and Costs.  On October 22, 2020, Plaintiffs filed a Supplemental FRCP 54 Motion for Attorney Fees and Costs.

**PLAINTIFFS' FRCP 54 MOTION (#18)**
**FOR ATTORNEY FEES AND COSTS**

In their Motion for Attorney Fees and Costs Plaintiffs seek

$237,712.50 in attorneys' fees, comprised of attorneys' fees in

the amount of $158,475 and a "1.5x multiplier based on

Defendant's . . . bad faith conduct during Plaintiffs' claim

which continued during the course of litigation." Pls.' FRCP 54

Mot. for Attorney Fees at 1.

**I.    Plaintiffs are entitled to reasonable attorneys' fees.**

Plaintiffs seek attorneys' fees pursuant to Oregon Revised

Statutes § 742.061, which provides:

> [I]f settlement is not made within six months from
> the date proof of loss is filed with an insurer
> and an action is brought in any court of this
> state upon any policy of insurance of any kind or
> nature, and the plaintiff's recovery exceeds the
> amount of any tender made by the defendant in such
> action, a reasonable amount to be fixed by the
> court as attorney fees shall be taxed as part of
> the costs of the action and any appeal thereon.

Plaintiffs assert they have met their burden to establish that

they are entitled to reasonable attorneys' fees pursuant to

§ 742.061 because the record reflects (1) they presented their

proof of loss to Defendant not later than August 9, 2017;

(2) Plaintiffs brought this action for breach of contract against

Defendant on August 5, 2019; and (3) Defendant tendered payment

of $295,000 to Plaintiffs on June 17, 2020, which is more than

six months after Plaintiffs presented their proof of loss.

Defendant concedes in its Response to Plaintiffs' Motion

17 - OPINION AND ORDER

that Plaintiffs are entitled to reasonable attorneys' fees pursuant to § 742.061.  Defendant, however, asserts Plaintiffs have not established they are entitled to a multiplier or that the hours requested by Plaintiffs' counsel are reasonable.

The Court concludes on this record that Plaintiffs have established they are entitled to reasonable attorneys' fees pursuant to § 742.061.

## II.  Standards.

"In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law." *Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1004 (9th Cir. 2009)(quotation omitted).

When determining the amount of an award for attorneys' fees and, as in this case, the "award of attorney fees is authorized or required by statute," Oregon Revised Statutes § 20.075(2) directs the Court to consider the following factors set out in § 20.075(1):

> (a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

> (b) The objective reasonableness of the claims and defenses asserted by the parties.

      (c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

      (d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

      (e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

      (f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

      (g) The amount that the court has awarded as a prevailing party fee under ORS 20.190 (prevailing party fees).

      (h) Such other factors as the court may consider appropriate under the circumstances of the case.

Oregon Revised Statutes § 20.075(2) directs the Court also to consider the following factors when determining the amount of attorneys' fees:

      (a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

      (b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

      (c) The fee customarily charged in the locality for similar legal services.

      (d) The amount involved in the controversy and the results obtained.

      (e) The time limitations imposed by the client or the circumstances of the case.

19 - OPINION AND ORDER

(f) The nature and length of the attorney's professional relationship with the client.

(g) The experience, reputation and ability of the attorney performing the services.

(h) Whether the fee of the attorney is fixed or contingent.

## III. Factors under Oregon Revised Statutes § 20.075(1).

### A.    Oregon Revised Statutes § 20.075(1)(a)

Oregon Revised Statutes § 20.075(1)(a) directs the Court to consider "the conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal."  This factor "looks at the conduct of the parties in the transactions or occurrences that gave rise to the litigation."  *Burt v. deNoyo*, No. 6:14-CV-01098-AA, 2017 WL 1025182, at *3 (D. Or. Mar. 16, 2017).

Plaintiffs assert Defendant engaged in conduct that was at least reckless when it repeatedly insisted Plaintiffs had a ten-percent limit on their "ordinance or law coverage" and emailed the April 2, 2019, decision to an email address that Defendant should have known did not belong to Plaintiffs.

### 1.   Defendant's insistence on a ten-percent limit on Plaintiffs' ordinance or law coverage.

Plaintiffs assert Defendant's "repeated attempts to enforce a 10% limit on the ordinance or law coverage when the policy clearly provided up to 100% of the policy limits for

20 - OPINION AND ORDER

ordinance or law coverage w[ere] either reckless or made in bad
faith." Pls.' FRCP 54 Mot. at 17. Plaintiffs point out that
their policy and the additional coverage k endorsement were
drafted by Defendant, and Defendant had both documents available
to them at all relevant times. In addition, the record reflects
Pitts was aware no later than December 14, 2018, that Plaintiffs
had the additional coverage k endorsement. As noted, Pitts
stated in the claim-activity log on December 14, 2018, that she
reviewed Plaintiffs' policy and noted they had "the HR700
Endorsement which gives [them] 100% for code upgrades." Reiner
Decl., Ex. 6 at 7. Similarly, on April 9, 2019, Baldwin emailed
Young and Associates and advised she "checked on the Ordinance of
Law coverage and we do not have a limit concern on this.
[Plaintiffs] have an endorsement adding additional code
coverage." Reiner Decl., Ex. 6 at 9. On June 5, 2019, Baldwin
reiterated in the claim-activity log that Plaintiffs' policy
included

> the Homeowners Plus Endorsement HR700 . . .
> which changes Additional Coverage K Ordinance
> of Law from 10% to 100% code. The code
> coverages is [*sic*] included as part of the
> Coverage A Dwelling limits.

Reiner Decl., Ex. 6 at 10. Baldwin again noted in her July 24,
2019, email to Pitts that Plaintiffs' "policy contains Homeowners
Plus Endorsement HR700OR which provides 100% coverage for
ordinance or law costs incurred up to the policy limits." Reiner

21 - OPINION AND ORDER

Decl., Ex. 8 at 1.

Despite the reiterations that Plaintiff had additional endorsement k, on August 2, 2019, which was nine days after Baldwin's July 24, 2019, email noting Plaintiffs' 100% code coverage, Defendant declined to pay any further funds on Plaintiffs' claim relying in part on its belief that Plaintiffs had a ten-percent limit in ordinance or law coverage.

Defendant asserts in its Response that its continued insistence on covering Plaintiffs' repairs at 10% of code was due to "clerical and administrative missteps" and that the "policy was misread, a claim file suffered from poor annotation, and the insureds nonetheless ultimately received payment for their claim." Def.'s Resp. at 21. Defendant contends this was not reckless or bad-faith conduct.

In *Beck v. Metropolitan Property & Casualty Insurance Company* Magistrate Judge John Acosta found the defendant's conduct, which was similar to Defendant's conduct in this case, indicated recklessness and/or bad faith. No. 3:13-CV-00879-AC, 2016 WL 4978411, at *13 (D. Or. Sept. 16, 2016). In *Beck* the defendant's "adjuster and its retained consultant . . . produced successively higher RCV and ACV estimates for [the plaintiff's] home. Notwithstanding those estimates, [the defendant] never offered to pay [the plaintiff] more than the . . . payment it [initially] tendered to [the

22 - OPINION AND ORDER

plaintiff].” *Id*.  Here, as noted, Defendant had access to Plaintiffs' policy and endorsements at all times.  In addition, Baldwin and Pitts noted Plaintiffs' code coverage was not limited to ten percent, and, as a result, Defendant should have made additional payments to Plaintiffs to cover the costs of bringing Plaintiffs' residence up to code.  Defendant, however, repeatedly declined to pay Plaintiffs the full amount due under their policy.

On this record the Court concludes Defendant recklessly disregarded the terms of the policy and the information provided by its own adjusters.

### 2.    Defendant's August 2, 2019, Email to Incorrect Address.

Plaintiffs also assert Defendant engaged in behavior that was at least reckless when Pitts sent the August 2, 2019, email denying further coverage to an email address that Plaintiffs had never used and that was not Plaintiffs' email address.

The record reflects every contact Defendant had with Plaintiffs between August 7, 2017, and August 2, 2019, was in person or by telephone.  There is not any indication in the record that Plaintiffs had or used any email address, and it is unclear where Pitts got the email address she used to send Defendant's August 2, 2019, decision letter.  Plaintiffs point out this was particularly concerning because Plaintiffs were not

23 - OPINION AND ORDER

represented by counsel in August 2019, and on Tuesday, August 6, 2019, the statute of limitations was going to run on Plaintiffs' ability to bring a claim against Defendant.  If Plaintiffs did not receive Defendant's claim decision, which was sent on Friday, August 2, 2019, Plaintiffs could have been foreclosed from bringing suit.  Defendant, however, also sent the email to Moreland, and, as a result, Plaintiffs fortunately received Defendant's decision before the limitations period ran. Nevertheless, Defendant's carelessness could have caused significant unnecessary problems for Plaintiffs.

The Court concludes on this record that Defendant's conduct in the transactions or occurrences that gave rise to this litigation was reckless at the very least.

In summary, the Court concludes the Oregon Revised Statutes § 20.075(1)(a) factor favors Plaintiffs.

**B.    Oregon Revised Statutes § 20.075(1)(b)**

"Factor 20.075 (1)(b) looks at the objective reasonableness of the claims and defenses asserted by the parties." *Burt*, 2017 WL 1025182, at *3.  In other words, the question is whether the claim or defense asserted is objectively reasonable. *Id*.

Plaintiffs point out that Defendant asserted the ten-percent limit in ordinance or law coverage as an affirmative defense in its Answer filed September 13, 2019, even though Pitts

24 - OPINION AND ORDER

and Baldwin had repeatedly noted in the claim-activity log and in emails that Plaintiffs had additional coverage k.  Defendant, however, contends this was a clerical or administrative error.

The record reflects Pitts and Baldwin noted in the claim-activity log on more than one occasion that Plaintiffs had additional coverage k.  Baldwin also highlighted that fact in her July 24, 2019, email to Pitts.  In addition, Defendant and defense counsel had access to Plaintiffs' policy at all times before Defendant filed its Answer.  The Court finds defense counsel's failure to read or to understand the policy and its endorsements was not objectively reasonable.  The Court, therefore, concludes on this record that it was not objectively reasonable for Defendant to assert the ten-percent code coverage as a defense, and, therefore, this factor weighs in Plaintiffs' favor.

## C.    Oregon Revised Statutes § 20.075(1)(c) and (d)

"Factors 20.075(1)(c) and (d) look at the extent to which an attorney fee award would deter others from asserting good faith or meritless claims in similar cases."  *Burt*, 2017 WL 1025182, at *4.

There is not any indication that an award of attorneys' fees in this case would deter others from asserting good-faith claims or defenses.  The Court, therefore, concludes this factor is neutral.

**D.    Oregon Revised Statutes § 20.075(1)(e)**

Oregon Revised Statutes § 20.075(1)(e) directs the Court to evaluate "[t]he objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings."

As noted, the Court has concluded Defendant's assertion of the ten-percent code coverage as an affirmative defense was objectively unreasonable.  In addition, even after Plaintiffs' counsel alerted defense counsel to the fact that Plaintiffs had additional coverage k, Defendant did not offer to pay Plaintiffs the $99,319.96 in code coverage that Defendant's own calculations indicated were owed to Plaintiffs.

On this record the Court finds the "objective reasonableness" of Defendant and the diligence of Defendant and its attorneys during the proceedings left much to be desired. Accordingly, the Court concludes this factor favors Plaintiffs.

**E.    Oregon Revised Statutes § 20.075(1)(f)**

Oregon Revised Statutes § 20.075(1)(f) directs the Court to consider "[t]he objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute."

Plaintiffs point out that at mediation in December 2019 Defendant offered Plaintiffs only $72,000, which included attorneys' fees, to settle the matter.  The offer of $72,000 was

significantly lower than the $99,319.96 in code coverage that
Defendant earlier calculated it owed Plaintiffs, and the
$99,319.96 did not include any amount for attorneys' fees.
Moreover, on April 2, 2020, Defendant offered to settle for the
amount Plaintiffs requested in December 2019 at mediation:
$200,000 exclusive of attorneys' fees.  By April 2020, however,
Plaintiffs had incurred more costs of living and expected to
incur "seven more months of continued expenses for temporary
housing, storage, propane, porta•potty, laundry, electricity and
other expenses."  Plaintiffs counteroffered to settle for
"$305,000, with the exception of attorney fees and costs."
Ultimately the parties settled for $295,000 exclusive of
attorneys' fees, which is in line with Plaintiffs' proposal in
April 2020.

　　　The Court finds on this record that Defendant's conduct
in pursuing settlement was not objectively reasonable or
diligent.  The Court, therefore, concludes this factor favors
Plaintiffs.

　　In summary, the Court concludes the § 20.075(1) factors are
neutral or favor Plaintiffs.

## IV.  Oregon Revised Statutes § 20.075(2) Factors

　　Oregon Revised Statutes § 20.075(2) directs the Court to
consider a number of other factors when determining the amount of
attorneys' fees.

27 - OPINION AND ORDER

**A.    Oregon Revised Statutes § 20.075(2)(a)**

Oregon Revised Statutes § 20.075(2)(a) directs the Court to consider "the time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services."

This case required knowledge of insurance law and construction issues.  The knowledge, skill, and experience of Plaintiffs' counsel in insurance law and construction issues were valuable assets.  Although the case involved only the issue of determining the value of Plaintiffs' claim, Defendant's lack of familiarity with the terms of Plaintiffs' policy and failure to tender to Plaintiffs the funds that Defendant's own adjusters suggested Plaintiffs were entitled to greatly increased the amount of time and labor that Plaintiffs' counsel had to invest in the case.  Also relevant to the evaluation of this factor are the Court's previous discussions of the § 20.075(1) factors.

On this record the Court concludes this factor favors Plaintiffs.

**B.    Oregon Revised Statutes § 20.075(2)(b)**

Oregon Revised Statutes § 20.075(2)(b) directs the Court to consider "[t]he likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases."

28 - OPINION AND ORDER

The parties agree this factor is not particularly relevant in this case.  The Court, therefore, concludes this factor is neutral.

**C.    Oregon Revised Statutes § 20.075(2)(c)**

Oregon Revised Statutes § 20.075(2)(c) directs the Court to consider "[t]he fee customarily charged in the locality for similar legal services."

Plaintiffs seek attorneys' fees for attorney Anthony Reiner at a rate of $450 per hour, attorney C.J. Martin at a rate of $350 per hour, and paralegal Cher Vasquez at a rate of $150 per hour.  Defendant does not assert the hourly rates requested for Plaintiffs' counsel and paralegal are unreasonable. Nevertheless, the Court has an independent duty to review a motion for attorneys' fees for reasonableness.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992).  *See also Cruz v. Alhambra Sch. Dist.*, 282 F. App'x 578, 580 (9th Cir. 2008)(The district court has an "obligation to articulate . . . the reasons for its findings regarding the propriety of the hours claimed or for any adjustments it makes either to the prevailing party's claimed hours or to the lodestar.").

To determine the reasonable hourly rate of an attorney this Court uses the most recent Oregon State Bar Economic Survey published in 2017 as its initial benchmark.  Attorneys may argue for higher rates based on inflation, specialty, or any number of

other factors.

### 1. Attorney Anthony Reiner

Plaintiffs request an hourly rate of $450 for the time attorney Reiner spent on this case.

Reiner graduated from law school in 1996 and has 24 years of experience. He is a partner in Maloney Lauersdorf Reiner PC, a firm that specializes in insurance-coverage litigation. Reiner states in his Declaration that he has "litigated hundreds of insurance coverage matters." Reiner Decl. at ¶ 2. The Oregon State Bar Economic Survey rates for an attorney with comparable years of practice in Portland is between $415 and $525 per hour. The Court, therefore, concludes the hourly rate of $450 sought by Reiner is reasonable.

### 2. Attorney C.J. Martin

Plaintiffs request an hourly rate of $350 for the time of attorney Martin.

Martin graduated from law school in 2010 and has 10 years of experience. Martin has significant experience litigating insurance-coverage claims. Reiner Decl. at ¶ 4. The Oregon State Bar Economic Survey rates for an attorney with comparable years of practice in Portland is between $225 and $410 per hour. The Court, therefore, concludes the hourly rate of $350 sought by Martin is reasonable.

### 3.    Paralegal Cher Vasquez

Plaintiffs request an hourly rate of $150 for paralegal Vasquez's time.

Reiner states in his Declaration that Vasquez has worked as a complex-litigation legal assistant and paralegal for 25 years, and a "substantial portion of her work . . . has been on insurance coverage, insurance fraud, and policyholder cases." Reiner Decl. at ¶ 7.

The Court relies on the National Utilization and Compensation Survey Report published by The Association of Legal Assistants Paralegals (NALA) in 2016 to determine the reasonable hourly billable rate for paralegals.  The NALA Survey Report indicates the average hourly billing rate in 2016 was $148 for paralegals in the Far West Region (which includes Oregon) with 25 years of experience.  Adjusting the 2016 hourly rate for inflation, the Court concludes the hourly rate of $150 sought by Vasquez is reasonable.

### D.    Oregon Revised Statutes § 20.075(2)(d)

Oregon Revised Statutes § 20.075(2)(d) directs the Court to consider "[t]he amount involved in the controversy and the results obtained."  Courts have explained "[t]he idea [behind § 20.075(2)(d)] is to allow those who bring relatively small claims to obtain the entire amount of the fees expended, so that insurers cannot simply make such claims too expensive to be worth

31 - OPINION AND ORDER

pursuing." *Axis Surplus Ins. Co. v. Lebanon Hardboard, LLC*, No. 07-cv-292-MO, 2009 WL 490008, at *6 (D. Or. Feb. 26, 2009) (citing *Barbara Parmenter Living Trust v. Lemon*, 345 Or. 334 (2008)). *See also Beck*, 2016 WL 4978411, at *21 ("Although the instant case does not involve a 'relatively small claim,' th[e] policy of discouraging insurers from making claims too expensive to pursue applies with equal force.").

Plaintiffs sought "in excess of $200,000" in their Complaint; during mediation in December 2019 they sought $200,000 exclusive of attorneys' fees; and during settlement negotiations in April 2020 they sought $305,000. As noted, the parties ultimately settled this matter for $295,000 exclusive of attorneys' fees. Plaintiffs assert 95% recovery of the amount they sought in April 2020 is a successful result. The Court agrees and concludes this factor favors Plaintiffs.

### E.    Oregon Revised Statutes § 20.075(2)(e)

Oregon Revised Statutes § 20.075(2)(e) directs the Court to consider "[t]he time limitations imposed by the client or the circumstances of the case."

Plaintiffs assert a time limitation in this matter was "imposed by" Plaintiffs' "unpleasant circumstances." Specifically, Plaintiffs had been seeking their full insurance benefits for two years at the time litigation began. Clint Edwards also had planned to retire near the time of the accident,

but he continues to work because he did not want to retire until
he could be sure his income would not be needed to repair
Plaintiffs' home.

The Court finds this factor only slightly favors
Plaintiffs because even though Clint Edwards's retirement
situation contributed to Plaintiffs' desire to resolve their
claim quickly, "obtaining a speedy resolution of a case is a goal
shared by most litigants and, thus, is not a factor entirely
unique to this case." *Beck*, 2016 WL 497411, at *21.

**F.   Oregon Revised Statutes §§ 20.075(2)(f) and (g).**

Oregon Revised Statutes § 20.075(2)(f) directs the
Court to consider "[t]he nature and length of the attorney's
professional relationship with the client."  Oregon Revised
Statutes § 20.075(2)(g) directs the Court to consider "[t]he
experience, reputation and ability of the attorney performing the
services."

The parties agree § 20.075(2)(f) is not a significant
factor in this case.  As to § 20.075(2)(g), the parties also
agree Plaintiffs' counsel are experienced, have a good
reputation, and are more than able to litigate this matter.  The
Court, therefore, finds these factors are neutral or slightly
favor Plaintiffs.

**G.   Oregon Revised Statutes §§ 20.075(2)(h).**

Oregon Revised Statutes § 20.075(2)(h) directs the

Court to consider whether "the fee of the attorney is fixed or contingent."

Plaintiffs' counsel undertook this matter on a contingency-fee basis.  Plaintiffs' counsel, therefore, "undertook a risk of not being fully compensated for their time on the case." *Beck*, 2016 WL 4978411, at *22.  In addition, the Ninth Circuit has pointed out that "lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees.  The payoff is too uncertain, as to both the result and the amount of the fee." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  For the reasons above, the Court concludes this factor favors Plaintiffs.

In summary, the Court concludes the § 20.075(1) and (2) factors are either neutral or favor Plaintiffs.

## IV.  Attorney Hours

Oregon Revised Statutes § 20.075(1)(h) directs the Court to consider "[s]uch other factors as the court may consider appropriate under the circumstances of the case."  Pursuant to this provision the Court also considers the number of hours of attorney and paralegal time requested by Plaintiffs for a total of $158,574.

In their FRCP 54 Motion for Attorney Fees Plaintiffs seek 247 hours of time for Reiner, 131.7 hours of time for Martin, and 11.9 hours of time for Vasquez accrued between June 2019 and

34 - OPINION AND ORDER

June 2020 for a total of $158,475.  The billing records
supporting Plaintiffs' request, however, reflect the amount of
time billed during that period is 246.7 hours for Reiner and
130.5 hours for Martin.  Reiner Decl., Ex. 17 at 40.  The Court
uses these slightly lower billable hours in its evaluation on the
ground that they agree with the total amount of fees sought by
Plaintiffs.  *See* Exs. 1 and 2 to Opin. and Order.

Defendant contends Plaintiffs' counsel duplicated efforts
and had numerous inefficiencies that led to excessive billable
hours.  Defendant asserts a reasonable number of hours in this
matter results in an award of no more than $132,000.

**A.   Parties' Experts Regarding Attorneys' Fees**

Plaintiffs rely on the Declaration of Christopher
Carson to support their attorney-fee request.  Christopher Carson
is an attorney at Kilmer Voorhees & Laurick, P.C., working in the
area of insurance coverage "for carriers and policyholders" and
has been licensed to practice in Oregon since 1984.  Decl. of
Christopher Carson at ¶ 1.  It is Carson's opinion that the rates
and time incurred by Plaintiffs' counsel are reasonable.
Specifically, Carson states Defendant "created the attorney fee
exposure to itself.  Whether by inattention or design [Defendant]
forced [Plaintiffs] to litigate, and then paid 95% of the claim."
Carson Decl. at ¶ 9.  Carson notes, for example, Defendant
admitted in its Response to Plaintiffs' Requests for

Admission that

> the affirmative defense related to the 10% code
> limitation was an "unintentional error," and that
> [Plaintiffs] did not express intent to accept
> payments made as full satisfaction of the claim.
> [Defendant] alleged accord and satisfaction in its
> Answer and the 10% code limitation for no apparent
> reason in light of this admission.

Carson Decl. at ¶ 10.  In addition, Carson states Reiner's time

spent "in document review and deposition preparation" is

reasonable.  Carson notes

> much of [Reiner's] time was devoted to review of
> [Defendant's] claim file and claim notes, which
> totaled 1,110 pages. . . . Files like this cannot
> be casually word-searched or delegated to others.
> Because the claim changed hands multiple times
> during [Defendant's] handling, a detailed
> comparison between the statements of different
> adjusters was required.  The attorney preparing
> for depositions needs to be conversant with the
> carrier's file and take detailed notes for
> depositions.  This is particularly true here with
> the affirmative defenses raised.

Carson Decl. at ¶ 11.

Defendant's expert, William Earle, is a shareholder in

Davis Rothwell Earle and Xóchihua, P.C., and has been licensed to

practice law in Oregon since 1983.  Earle's "primary area of

expertise is in the field of insurance coverage law and

litigation."  Decl. of William Earle at ¶ 2.  Earle states

although "the hourly rates charged by [Plaintiffs'] counsel are

within the norms of that charged in the area for similar years of

experience," "some of the time requested" is not necessary.

Specifically, Earle takes issue with the $47,695 Plaintiffs'

counsel billed for file review, deposition preparation, and
deposition attendance.  In particular, Earle asserts "much of the
time requested for reviewing the claim file and preparing for and
taking the depositions of four adjusters was not reasonable or
necessary.  Combined, attorneys Reiner and Martin spent well over
100 hours, worth close to $50,000, on those tasks."  Earle Decl.
at ¶ 11.  Earle notes Martin spent 9.4 hours reviewing
Defendant's claim file.  Earle states it would be more in line
with industry norms to have a paralegal review the file, and he
"would expect a paralegal to spend 6-8 hours" doing that.  Earle
Decl. at ¶ 12.  As a result, Earle recommends reducing Martin's
time for reviewing the claim file to 4.7 hours for a total of
$1,645.  Earle also points out that to prepare for depositions
Reiner spent 38.2 hours reviewing the claim file that Martin had
already reviewed.  Reiner then spent an additional 22.6 hours
preparing for depositions.[3]  Earle asserts "most of the time"
Reiner spent reviewing the file was "excessive and unnecessary."
Earle Decl. at ¶ 16.  Earle contends Martin "(or a paralegal)
should have presented [the file] to Mr. Reiner in . . . workable
order."  Earle Decl. at ¶ 16.  Earle notes Reiner needed "to be

---

[3] Earle states in his Declaration that Reiner spent 26.7
hours preparing for depositions.  Exhibit A to Earle's
Declaration, however, reflects Reiner spent 22.6 hours preparing
for depositions.  The Court assumes the 26.7 amount in Earle's
Declaration is a clerical error and uses 22.6 hours as the amount
of time at issue.  *See* Ex. 1 to Opin. and Order.

more efficient with his time" because he is billing at $450 per
hour.  In addition, the "200 pages in chart notes are not
particularly hard to understand.  Nor would it be necessary to
cross-check every entry — just the ones that were relevant."
Earle Decl. at ¶ 16.  Earle asserts it would be reasonable to
reduce the total time of Reiner's deposition preparation to 25
hours, which would still constitute nearly seven hours of
preparation for the four depositions.  Finally, Earle notes
Martin billed 18.3 hours to attend three depositions for a total
of $6,405 in attorneys' fees.  Earle asserts "it would not be
reasonable to award the time for Ms. Martin to 'second chair' the
depositions" because Reiner should have been fully prepared and
capable "of handling deposition questioning and exhibits by
himself."  Earle Decl. at ¶ 17.  Earle recommends the Court
decline to award Plaintiffs' attorneys' fees for the 18.3 hours
Martin spent attending three depositions.[4]

   B.   **Analysis**

        As noted, the record reflects Defendant continued to
assert Plaintiffs had a ten-percent code-coverage limitation
despite its adjusters noting on more than one occasion that
Plaintiffs had an additional coverage k endorsement.
The code-coverage limitation was also an issue in the litigation

---

        [4] Earle does not discuss the 11.9 hours billed by paralegal
Cher Vasquez nor does it appear Defendant objects to that time.

and was asserted as an affirmative defense.  In addition,
Defendant asserted other affirmative defenses that did not appear
to be supported by the record.  The Court, therefore, finds
Plaintiffs' counsel had to conduct a careful review of the record
to be well-prepared for depositions.  The Court, however, agrees
with Defendant that the 38.2 hours Reiner spent reviewing the
file after Martin had already done so was excessive, particularly
in combination with the 22.6 hours Reiner spent preparing for
depositions.  Accordingly, the Court declines to award attorneys'
fees to Plaintiffs for 38.2 hours of Reiner's time spent
reviewing the file.

        The Court also agrees with Defendant that Plaintiffs
have not established it was necessary for both Reiner and Martin
to attend three depositions.  Reiner is experienced enough to
manage deposition exhibits and questioning by himself.  The
Court, therefore, declines to award attorneys' fees to Plaintiffs
for 18.3 hours of Martin's time spent attending the three
depositions.

        Finally, the Court agrees with Defendant that it was
unnecessary for Martin to spend 2.5 hours preparing for two
depositions for which Reiner had already prepared.  The Court,
therefore, declines to award attorneys' fees to Plaintiffs for
2.5 hours of Martin's time spent preparing for two depositions.
On the other hand, the Court does not find it was unnecessary for

Martin to spend 9.4 hours reviewing the claims file, particularly in light of the Court's finding that it was unnecessary for Reiner to spent 38.2 hours reviewing the file.  The Court, therefore, awards attorneys' fees to Plaintiffs for the 9.4 hours that Martin spent reviewing the documents.

Defendant does not appear to object to the 11.9 hours billed by paralegal Cher Vasquez for tasks such as obtaining information about Defendant's representation and corporate information, for conducting an internet search for articles related to the accident, for drafting the contingency-fee agreement and summons, for working with the process server, and for performing similar administrative tasks.  The Court concludes the time spent by Vasquez on these matters was reasonable and necessary.  The Court, therefore, awards fees to Plaintiffs for the 11.9 hours of Vasquez's time.

In conclusion, before evaluating the issue of a multiplier the Court concludes Plaintiffs have established $23,225 of the $47,695 in disputed attorneys' fees was reasonably expended.  *See* Ex. 1 to Opin. and Order.  Accordingly, the Court concludes Plaintiffs have established they reasonably accrued attorneys' fees in the amount of $134,005.

**V.   Multiplier**

As noted, Plaintiffs also seek a 1.5x multiplier on attorneys' fees due to "Defendant's failure to honor the

statutory standard, and pay policy benefits owed under the
Policy's 100% Code coverage both before and after litigation."
Pls.' Reply at 2.   Plaintiffs point out that Defendant's
adjusters noted several times that Plaintiffs' had the additional
coverage k endorsement, and in June 2019 Defendant had a repair
estimate from its consultant that was within $28,000 of
Plaintiffs' repair estimate.   Nevertheless, Defendant did not
make any payments on Plaintiffs' claim between December 7, 2018,
and June 11, 2020, when the matter settled.   In addition,
Defendant continued to assert in its Answer that a ten-percent
code-coverage limitation applied to Plaintiffs' claim.   According
to Plaintiffs, Defendant also failed to make a reasonable
settlement offer based on Plaintiffs' repair estimate and code
coverage until April 2020.

      "Oregon law permits an enhancement of fees when it is
supported by the facts and circumstances of the case." *Beck*,
2016 WL 4978411, at *22 (citing *Griffin v. TriMet*, 112 Or. App.
575, 585 (1992), *aff'd in part and rev'd in part*, 318 Or. 500
(1994)(approving trial-court award of 2.0 multiplier)).   "[T]he
purpose of Oregon's statute 'allowing recovery of attorney fees
by claimants under insurance policies is to encourage the
settlement of such claims without litigation and to reimburse
successful plaintiffs reasonably for moneys expended for attorney
fees in suits to enforce insurance contracts.'" *Foraker v. USAA*

41 - OPINION AND ORDER

*Cas. Ins. Co.*, No. 3:14-CV-87-SI, 2018 WL 3873575, at *6 (D. Or. Aug. 15, 2018)(quoting *Chalmers v. Or. Auto. Ins. Co.*, 263 Or. 449, 452 (1972)). "The statute 'was intended to protect an insured who has suffered a loss from annoying and expensive litigation. . . . [It] seeks to protect insureds from the necessity of litigating their valid claims." *Foraker,* 2018 WL 3873575, at *6 (quoting *Dockins v. State Farm Ins. Co.*, 329 Or. 20, 29 (1999)).

In *Foraker* the plaintiff asserted claims against her automobile insurance carrier arising out of an accident with an uninsured driver. The plaintiff succeeded in phase one of her case relating to her claim of breach of express contract and moved for an award of attorneys' fees that included a 2.0 multiplier. District Judge Michael Simon found an attorney-fee multiplier of 1.5 was appropriate. Judge Simon noted both parties took "some positions [that] were not reasonable [and] some positions [that] were reasonable" and "raised some arguments with merit and some arguments without merit." *Foraker*, 2018 WL 3873575, at *6. In addition, "[a]lthough Plaintiff had some role" in the possible "over-litigat[ion]" of the case, "it was mainly Defendant's conduct during the proceedings that resulted in the possible over-litigation." *Id.*, at 7. Moreover, although the offer the defendant made at the close of trial "was not insubstantial," the defendant "originally did not make

significant settlement offers." *Id*. Judge Simon also found the fact that the plaintiff's counsel took the case on a contingency basis weighed heavily in favor of awarding a multiplier and noted:

> Plaintiff's counsel faced a risk of nonpayment, or at least a substantial delay in receiving payment, and advanced significant upfront litigation costs and expenses. Evaluating the overall conduct of the parties and counsel, Defendant's conduct and that of its counsel supports a multiplier in the amount 1.5. The Court, however, does not find that the conduct of Defendant and its agents rises to the level of supporting a multiplier of 2 or that the risk of nonpayment or other factors support such a multiple.

*Id.*, at *9.

As in *Foraker*, here Plaintiffs' counsel took this matter on a contingency-fee basis. In addition, Defendant did not make a significant settlement offer until April 2020. Finally, although Plaintiffs' counsel played some role in the intense litigation of this case, it was Defendant's conduct during the proceedings that resulted in more litigation than was strictly necessary. On this record, therefore, the Court concludes these factors support a multiplier of 1.5.

Accordingly, the Court awards to Plaintiffs **$201,007.50** in attorneys' fees before considering Plaintiffs' preparation of their Supplemental FRCP 54 Motion for Attorney Fees. *See* Ex. 2 to Opin. and Order.

**PLAINTIFFS' SUPPLEMENTAL FRCP 54**
**MOTION (#36) FOR ATTORNEY FEES**

In their Supplemental FRCP 54 Motion for Attorney Fees Plaintiffs seek $39,050 in attorneys' fees comprised of 45.1 hours for Reiner, 53.2 hours for Martin, and .9 hours for Vasquez "for the time and costs associated with Plaintiffs' Motion for Attorney Fees and Costs and Reply in Support of Motion for Attorney Fees and Costs."

Defendant does not dispute Plaintiffs may seek attorneys' fees for time spent drafting their Motion and Reply for Attorney Fees nor does Defendant assert the rates requested by Plaintiffs are unreasonable.  Defendant, however, asserts the total requested time related to these filings is unreasonable.

Specifically, Defendant notes Martin spent 22 hours preparing Plaintiffs' FRCP 54 Motion for Attorney Fees and Costs and Reiner spent 25 hours revising Martin's work.  Martin spent 30 hours preparing Plaintiffs' Reply, and Reiner spent 25 hours revising the Reply.  William Earle notes in his second Declaration that "a partner in a law firm specializing in representing policyholders in insurance litigation should be able to draft a petition for attorney fees by themself, with little or no assistance."  Decl. of William Earle in Support of Def.'s Resp. to Pls.' Suppl. FRCP 54 Mot. for Attorney Fees at ¶ 4. Earle asserts "such doubling up [of attorney work] is more than what would reasonably be expected or needed."  *Id*. at ¶ 5.

44 - OPINION AND ORDER

Earle also notes some of Martin's time involved tasks that would more reasonably have been done by a legal assistant. For example, Martin spent 2.8 hours preparing an "initial shell" of the Motion for Attorney Fees and 2.5 hours revising the Motion to include a table of cases, a table of contents, and a word count.

Finally, Earle asserts Plaintiffs' counsel spent too much time on the Motion and Reply. The Motion was four pages long and was accompanied by the three-page Declaration of Reiner and a print-out of Plaintiffs' billable-hour records. The Reply to the Motion for Attorney Fees was generally a restatement of the arguments that Plaintiffs made in their initial Motion. Earle asserts the Motion should not have taken 47 hours of attorney time to prepare and to revise, and the Reply should not have required 55 hours of attorney time to prepare and to revise.

Earle suggests the Court should reduce Reiner's requested time by 35 hours and reduce Martin's requested time by 15 hours. Earle does not take issue with the .9 hours billed by paralegal Vasquez, but he, nevertheless, suggests the Court decline to award fees to Plaintiffs for any of her time.

After reviewing the Motion for Attorney Fees and Reply, the Court agrees with Earle's evaluation. Specifically, the Court finds Martin spent time on tasks that should have been performed by a paralegal or legal assistant, and the time spent on the Motion and Reply is unreasonable for attorneys with the number of

years of practice and levels of experience of Reiner and Martin.
The Court, therefore, reduces Reiner's requested hours by 35 and
Martin's requested hours by 15 for a total award of **$18,050** in
attorneys' fees related to Plaintiffs' Supplemental FRCP 54
Motion for Attorney Fees.  *See* Ex. 3 to Opin. and Order.

In summary, the Court awards Plaintiffs total attorneys'
fees in the amount of **$219,057.50.**


### COSTS

Plaintiffs request costs in the amount of $712 for service
and filing fees.  Defendant does not object to Plaintiffs'
requested costs.

**I.   Standards.**

Absent a showing of circumstances not relevant here, an
award of costs is governed by federal law.  *See Champion Produce,
Inc. v. Ruby Robinson Co., Inc*., 342 F.3d 1016, 1022 (9th Cir.
2003).

28 U.S.C. § 1920 allows a federal court to tax specific
items as costs against a losing party pursuant to Federal Rule of
Civil Procedure 54(d)(1).  Section 1920 provides:

> A judge or clerk of any court of the United States
> may tax as costs the following:
>
> (1)  Fees of the clerk and marshal;
>
> (2)  Fees for printed or electronically recorded
> transcripts necessarily obtained for use in the

case;

(3)  Fees and disbursements for printing and witnesses;

(4)  Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5)  Docket fees under section 1923 of this title;

(6)  Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

## II.  Analysis

As noted, costs generally are awarded to the prevailing party in a civil action as a matter of course unless the court directs otherwise.  Fed. R. Civ. P. 54(d).  The court must limit an award of costs to those defined in 28 U.S.C. § 1920 unless otherwise provided for by statute.  *Grove v. Wells Fargo Fin. Ca., Inc.*, 606 F.3d 577, 579-80 (9th Cir. 2010).  *See also Haagen-Dazs Co., Inc. v. Double Rainbow Gourmet Ice Creams, Inc.*, 920 F.2d 587, 588 (9th Cir. 1990)(citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987)).

The Court finds the costs sought by Plaintiffs are specifically allowed under § 1920.  Accordingly, the Court awards costs to Plaintiffs in the amount of **$712.**

## **CONCLUSION**

For these reasons, the Court **GRANTS** Plaintiffs' FRCP 54 Motion (#18) for Attorney Fees and Costs and Plaintiffs' Supplemental FRCP 54 Motion (#36) for Attorney Fees and **AWARDS** attorneys' fees to Plaintiffs in the amount of **$219,057.50** and costs in the amount of **$712.**

IT IS SO ORDERED.

DATED this  8th  day of February, 2021.


                                        /s/Anna J. Brown
                              _____
                              ANNA J. BROWN
                              United States Senior District Judge

***Edwards v. Cincinnati Ins. Co.***
***19-cv-1425-BR***

**Disputed Deductions Calculations**

| Attorney | Rate | Hours | Total as requested | Defendant suggested deductions | Total with Defendant's deductions | Court's deductions | Total with Court's deductions |
|---|---|---|---|---|---|---|---|
| **Anthony Reiner** | 450 | | | | | | |
| Deposition Prep General | | 5.2 | | | | | |
| | | 3 | | | | | |
| | | 2.9 | | | | | |
| | | 5.1 | | | | | |
| | | 4.3 | | | | | |
| | | 4.2 | | | | | |
| | | 6 | | | | | |
| | | 3.1 | | | | | |
| | | 3.7 | | | | | |
| | | 0.7 | 38.2 | $ 17,190.00 | 38.2 | $       - | 38.2 | $       - |
| Depo Prep Fondse | | 1.1 | | | | | |
| | | 3.8 | | | | | |
| | | 2.6 | 7.5 | $ 3,375.00 | 0 | $ 3,375.00 | 0 | $ 3,375.00 |
| Depo Prep Pitts | | 2.9 | 2.9 | $ 1,305.00 | 0 | $ 1,305.00 | 0 | $ 1,305.00 |
| Depo Prep Baldwin | | 2.2 | | | | | |
| | | 2.1 | 4.3 | $ 1,935.00 | 0 | $ 1,935.00 | 0 | $ 1,935.00 |
| Depo Prep Cackowski | | 7.1 | | | | | |
| | | 0.8 | 7.9 | $ 3,555.00 | 0 | $ 3,555.00 | 0 | $ 3,555.00 |
| Depose Fondse | | 7 | | | | | |
| Depose Baldwin | | 5.5 | | | | | |
| Depose Cackowski | | 9.2 | 21.7 | $ 9,765.00 | 0 | $ 9,765.00 | 0 | $ 9,765.00 |
| | | 82.5 | | $ 37,125.00 | | $ 19,935.00 | | $ 19,935.00 |
| **C.J. Martin** | 350 | | | | | | |
| Document review | | 1 | | | | | |
| | | 1.6 | | | | | |
| | | 2 | | | | | |
| | | 1.1 | | | | | |
| | | 1.9 | | | | | |
| | | 1.8 | 9.4 | $ 3,290.00 | 4.7 | $ 1,645.00 | 0 | $ 3,290.00 |
| Depo Prep Fondse | | 0.3 | | | | | |
| | | 0.4 | | | | | |
| | | 0.9 | | | | | |
| Depo Prep Cackowski | | 0.9 | 2.5 | $ 875.00 | | $ 875.00 | 2.5 | $       - |
| Attend Depo Fondse | | 7 | | | 7 | $       - | 7 | $       - |
| Attend Depo Baldwin | | 4.5 | | | 4.5 | $       - | 4.5 | $       - |
| Attend Depo Cackowski | | 6.8 | 18.3 | $ 6,405.00 | 6.8 | $       - | 6.8 | $       - |
| | | 30.2 | | $ 10,570.00 | 18.3 | $ 2,520.00 | | $ 3,290.00 |
| | | | | $ 47,695.00 | | $ 22,455.00 | | **$ 23,225.00** |

**EXHIBIT 1**

*Edwards v. Cincinnati Ins. Co.*
*19-cv-1425-BR*
**Motion (#18) for Attorney Fees**

| Attorney | requested hours | disallowed hours | total hours | rate | Total fee allowed | |
|----------|-----------------|------------------|-------------|------|-------------------|---|
| **Reiner** | 246.7 | 38.2 | 208.5 | 450 | $ 93,825.00 | |
| **Martin** | 130.5 | 20.8 | 109.7 | 350 | $ 38,395.00 | |
| | | | | | $ 132,220.00 | |
| **Vasquez** | 11.9 | 0 | 11.9 | 150 | $ 1,785.00 | |
| | | | 330.1 | | **$ 134,005.00** | Total Fees before multiplier |
| | | | | | **1.5** | Multiplier |
| | | | | | **$ 201,007.50** | Total Attorneys' Fees |

**EXHIBIT 2**

*Edwards v. Cincinnati Ins. Co.*
*19-cv-1425-BR*
**Supplemental Motion (#36) for Attorney Fees**

| Attorney | requested hours | disallowed hours | total hours | rate | Total fee allowed | |
|---|---|---|---|---|---|---|
| Reiner | 45.1 | 18 | | | | |
| | | 17 | 10.1 | 450 | $ 4,545.00 | |
| Martin | 53.2 | 5 | | | | |
| | | 10 | 38.2 | 350 | $ 13,370.00 | |
| | | | | | $ 17,915.00 | |
| Vasquez | 0.9 | 0 | 0.9 | 150 | $ 135.00 | |
| | | | 49.2 | | **$ 18,050.00** | Total Fees Allowed for Supplemental Fee Petition |
| | | | | | **$ 219,057.50** | Total Combined Fee Award |

**EXHIBIT 3**